UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CV-56-BR

| | |
|---|---|
| BLONDELL MOSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| PASQUOTANK COUNTY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the second motion to dismiss (DE # 26) filed by defendant Pasquotank County ("County") on 9 September 2011. The motion is ripe for disposition.

**I. BACKGROUND**

Plaintiff Blondell Moss ("plaintiff") is an African-American female who suffers from rhinitis and chronic asthma. (Second Am. Compl. ¶¶ 21, 32, 48.) She was hired by the County in 1999 and initially worked as a rental attendant at FunJunktion. (Id. ¶ 13.) Between 1999 and 2001, plaintiff periodically filled in as a station attendant at the Pasquotank County Landfill. (Id. ¶ 14.) In 2001, she was transferred to the Pasquotank County Water Department ("Water Department") to work as a clerk. (Id. ¶ 15.) Plaintiff's primary job duty as a clerk was to collect and process utility payments from Pasquotank County residents. (Id.) From 2001 to 2008, plaintiff worked in a desk position. (Id. ¶ 18.) However, after May 2008, she was required to work at the Water Department's drive-thru window. (Id. ¶ 19.)

While working at the drive-thru window, plaintiff became violently ill. (Id. ¶ 20.) Her rhinitis and chronic asthma made her extra sensitive to air pollutants. (Id. ¶ 21.) Plaintiff informed her supervisors of her medical conditions and provided documentation of her need for

a reasonable accommodation.  (Id. ¶ 22.)

Beginning in May 2008 and until she was terminated, plaintiff regularly complained, orally and in writing, to her supervisors and to the Human Resources Director about being harassed because of her race, being unfairly treated because of her race, and being unlawfully denied an accommodation.  (Id. ¶ 75.)

From 2 September 2008 through 19 December 2008, plaintiff was temporarily assigned to the Board of Election.  (Id. ¶ 23.)  During that time, she did not experience medical problems related to her rhinitis or chronic asthma.  (Id.)  Upon returning to work at the Water Department's drive-thru window on 22 December 2008, she started to become ill again.  (Id. ¶ 24.)  In early January 2009, plaintiff was temporarily assigned to work in the library for approximately one week[1] and then was reassigned to the drive-thru window.  (Id. ¶ 25.)

Plaintiff returned to a desk position on or around 15 January 2009, and she did not experience any medical problems related to her rhinitis and chronic asthma while working at the desk job.  (Id. ¶ 26.)  She was eventually reassigned to the drive-thru window on or around 7 April 2009.  (Id. ¶ 27.)  Plaintiff became ill again and had to visit the emergency room.  (Id.)

Plaintiff took sick leave at the end of April 2009.  (Id. ¶ 28.)  She returned to work on 2 May 2009 and was informed that she would be assigned to the drive-thru window.  (Id.)  Plaintiff took leave rather than work at the drive-thru window.  (Id.)  During May and June 2009, plaintiff called her supervisors and asked where she would be assigned to work if she came in to the office.  (Id. ¶ 29.)  Each time, plaintiff was informed that she would have to work at the

---

[1] The second amended complaint states that plaintiff was assigned to work in the library in early January 2008.  Based on the chronology of events listed in the second amended complaint, the court assumes that the 2008 date is a typographical error.

drive-thru window.  (Id.)  Plaintiff used her sick leave and vacation time during this period in order to not have to continue working at the drive-thru window.  (Id.)  Plaintiff was terminated from her position on 22 June 2009 for alleged insubordination.  (Id. ¶ 30.)

Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 7.)  On 22 July 2010, the EEOC issued plaintiff a right-to-sue letter with respect to both charges.  (Id. ¶ 8.)  Plaintiff subsequently filed this action on 21 October 2010.  She filed an amended complaint on 22 February 2011.  (DE # 4.)  On 8 August 2011, the court entered an order dismissing the Water Department as a defendant and dismissing plaintiff's claims under the North Carolina Equal Employment Practices Act.  (DE # 23.)  The court also allowed plaintiff's motion to amend her complaint for a second time.  (Id.)  On 23 August 2011, plaintiff filed her second amended complaint.  (DE # 24.)  In this complaint, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").  She also asserts state law claims of wrongful discharge in violation of North Carolina public policy, negligence, and negligent hiring, training, and supervision.

The County filed its second motion to dismiss on 9 September 2011.  Plaintiff filed a response on 26 September 2011.  The County did not file a reply.

## II.  DISCUSSION

A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952

3

(4th Cir. 1992). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss under Rule 12(b)(6), "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). A court need not accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" Id. (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

B.     Race Discrimination Claims

Plaintiff, who is African-American, first argues that the County discriminated against her on the basis of her race. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a).

Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (applying these elements in the Rule 12(b)(6) context), aff'd, 132 S. Ct. 1327 (2012); White v.

4

BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The County admits that plaintiff has alleged that she is a member of a protected class, but it contends that she fails to assert sufficient facts to support the remaining elements of her claim. The County first argues that the Title VII race discrimination claim should be dismissed because plaintiff has pled no facts to support her basic assertion of historically satisfactory job performance and has also not alleged that she was performing her job duties satisfactorily during the time period relevant to this action. (See Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 6.)

The court disagrees with the County's interpretation of the second amended complaint. Plaintiff makes the following allegations in her complaint:

> From 2001 to 2008, Plaintiff worked in a desk position. During this time, Plaintiff successfully performed all aspects of the duties and responsibilities of the position. Moreover, Plaintiff was not provided with a verbal or written reprimand or counseling. Plaintiff was also assigned tasks that were not a part of her position description, which were also successfully performed.

(Second Am. Compl., DE # 24, ¶ 18.) Although plaintiff acknowledges that she received one poor performance appraisal, she maintains that this evaluation was "undeserved" and that she performed her job duties satisfactorily at all times relevant to this action. (Id. ¶ 71 ("During Plaintiff's eight-year employment with Defendant, she successfully performed the duties and responsibilities of her position, which is not underscored by a singular undeserved low performance rating.").) Thus, the court finds the County's argument with respect to this issue to be without merit.

Next, the County claims that plaintiff has not adequately identified the nature of the alleged adverse employment actions that were taken against her. (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 6-7.) However, plaintiff has alleged that the County terminated her

5

employment (see, e.g., Second Am. Compl., DE # 24, ¶ 30), and there can be no doubt that termination is an adverse employment action.  See, e.g., Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (stating that inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation.)  Thus, plaintiff has clearly suffered at least one adverse employment action, which is enough to survive the motion to dismiss with respect to this claim.

The County also argues that "plaintiff has not alleged facts supporting the element of different treatment from similarly situated employees outside of the protected class" and that plaintiff "has identified no connection between her race and any of the alleged adverse employment actions."  (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 7, 8.)  Again the court disagrees with the County's reading of the second amended complaint.  This is not a case where plaintiff simply states her race, lists a number of negative employment actions, and then makes a conclusory statement that these actions are due to race discrimination.  Rather, plaintiff has specifically alleged that two white males and a white female were treated more favorably than she was in that they either received accommodations from the County or received higher performance evaluations for less acceptable work performance.  (Second Am. Compl., DE # 24, ¶¶ 35-36.)  Although plaintiff's allegations are minimal, they are sufficient to demonstrate that she was treated differently from similarly situated employees outside the protected class.  Plaintiff also alleges that her race was a "determining" and "motivating" factor in the County's decision to terminate her and to take other unlawful actions against her.  (Id. ¶¶ 39-40.)  Based on these allegations, the court finds that plaintiff has sufficiently stated a Title VII race

6

discrimination claim against the County.

In connection with the Title VII claim, the County contends that plaintiff is also asserting claims for race discrimination pursuant to 42 U.S.C. §§ 1981 and 1981a. (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 4.) The County maintains that these claims should be dismissed because plaintiff "does not assert [them] anywhere in the body of her Second Amended Complaint." (Id.) In her response to the motion to dismiss, plaintiff clarifies that she is not asserting an independent cause of action under 42 U.S.C. § 1981a and that it is referenced in her complaint as part and parcel of her Title VII claim. (Pl.'s Mem. Opp. Mot. Dismiss, DE # 29, at 5 ("Plaintiff did not bring a separate claim under 42 U.S.C. § 1981a.").) Given that § 1981a provides only a remedy and does not create an independent cause of action, there are no "claims" under § 1981a for the court to dismiss. See, e.g., Powers v. Pinkerton, Inc., 28 F. Supp. 2d 463, 472 (N.D. Ohio 1997) ("[Section] 1981a does not afford an independent ground for relief but is a statutory provision for additional recovery of damages in Title VII cases.), aff'd 168 F.3d 490 (6th Cir. 1998); West v. Boeing Co., 843 F. Supp. 670, 675 (D. Kan. 1994) ("Section 1981a merely clarifies and adds to the damages available to a plaintiff who shows, under Title VII, that she was the victim of intentional discrimination in employment. It does not, either expressly or impliedly, create an additional cause of action for employment discrimination plaintiffs.").

Although plaintiff cannot raise an independent cause of action under § 1981a, she does assert a claim under 42 U.S.C. § 1981(a), which is an entirely different statute prohibiting discrimination in the making and enforcement of contracts. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976). To state a cause of action under 42 U.S.C. § 1981, a plaintiff must plead facts demonstrating: (1) that she is a member of a racial minority; (2) that

7

there was intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. See, e.g., Lemay v. Bridgestone Bandag, LLC, No. 5:09-CV-532-BO, 2010 WL 2465238, at *2 (E.D.N.C. June 15, 2010) (citing Pena v. Porter, 316 F. App'x 303, 316 (4th Cir. 2009)).

Here, while plaintiff mentions 42 U.S.C. § 1981 in the introductory paragraph of her second amended complaint, she does not set forth a separate count containing the § 1981 claim. (See Second Am. Compl., DE # 24, ¶ 1.) However, the fact that plaintiff has not presented the § 1981 cause of action in a separate count is not fatal to the claim. Federal Rule of Civil Procedure 10(b) does require a separate count for "each claim founded on a separate transaction or occurrence" "[i]f doing so would promote clarity," but in this case plaintiff grounds her § 1981 claim on the same transactions and occurrences as her Title VII claim. Furthermore, as plaintiff points out in her response to the motion to dismiss (see Pl.'s Mem. Opp. Mot. Dismiss, DE # 29, at 5-6), the required elements of a *prima facie* case of employment discrimination are the same under Title VII and § 1981. See, e.g., James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 n.1 (4th Cir. 2004); Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1998) (citing Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985)). Thus, the court finds that the second amended complaint is clear enough as it stands with respect to the § 1981 claim, and plaintiff will be allowed to proceed with the claim.[2]

---

[2] The County also argues that plaintiff's second amended complaint should be dismissed to the extent that it raises claims of disparate impact based on race. (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 3-4.) In her response to the motion to dismiss, plaintiff states that "[d]efendant's argument is unfounded since Plaintiff has not asserted a disparate impact claim with respect to any of her allegations in the Second Amended Complaint." (Pl.'s Mem. Opp'n Mot. Dismiss, DE # 29, at 27.) The court finds that plaintiff has not raised a disparate impact claim in the second amended complaint, and, therefore, there is no disparate impact claim to dismiss.

8

Case 2:10-cv-00056-BR   Document 34   Filed 06/19/12   Page 8 of 19

C. <u>Disability Claims</u>

Here, plaintiff brings two separate disability claims under the ADA: (1) a claim for failure to accommodate and (2) a claim for disability discrimination. When alleging a failure to accommodate, a plaintiff establishes a *prima facie* case by showing (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. <u>Haneke v. Mid-Atl. Capital Mgmt.</u>, 131 F. App'x 399, 400 (4th Cir. 2005); <u>Rhoads v. FDIC</u>, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

In this case, plaintiff has put forth allegations to show that she has a disability. She maintains that she suffers from rhinitis and chronic asthma and that these conditions impact a major life activity, *i.e.*, her ability to breathe. (Second Am. Compl., DE # 24, ¶¶ 64-65.) She also alleges that the County had notice of her disability (<u>id.</u> ¶¶ 66-67), that she could perform the essential functions of her position with reasonable accommodation (<u>id.</u> ¶ 71), and that the County refused to make such accommodations (<u>id.</u> ¶ 68).

Despite these allegations, the County contends that plaintiff has not properly raised a failure to accommodate claim. The County first argues that plaintiff has negated one of the essential elements of her claim by pleading that she was able to perform her job functions "'without a reasonable accommodation.'" (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 11 (quoting Second Am. Compl., DE # 24, ¶ 71).) The court notes that the County takes the quoted language out of context. The sentence containing the quoted language reads as follows: "Plaintiff was also able to perform both the functions of a desk clerk and drive thru window clerk

9

with or without a reasonable accommodation." (Second Am. Compl., DE # 24, ¶ 71.)

In evaluating whether a claim is stated, the court is obligated to construe the facts in the light most favorable to the plaintiff. Nemet Chevrolet, 591 F.3d at 255. When the sentence at issue is read in relation to the other allegations made in count three of the second amended complaint, it is reasonable to infer that plaintiff is alleging that she was able to successfully perform work at a desk or in other unpolluted environments without a reasonable accommodation. However, because she "was forced to continue working at the drive-thru window" (Second Am. Compl., DE # 24, ¶ 67), which was a location that exacerbated her medical conditions (id. ¶¶ 66-67), she needed a reasonable accommodation. Thus, plaintiff has adequately alleged that with reasonable accommodation she could perform the essential functions of the position, and she has not negated her failure to accommodate claim.

The County also argues that plaintiff relies solely "on her own assessment" of what constitutes a reasonable accommodation. (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 12.) The reasonableness of plaintiff's requested accommodation is a question of fact. See Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 833 (4th Cir. 1994) (Rehabilitation Act case); Feldman v. Law Enforcement Assocs. Corp., 779 F. Supp. 2d 472, 487 (E.D.N.C. 2011). A Rule 12(b)(6) motion emphatically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party, 980 F.2d at 952. Here, plaintiff has sufficiently pled a failure to accommodate claim under the ADA, and issues concerning the reasonableness of the requested accommodation are questions of fact that are more properly resolved at the summary judgment stage or at trial. See Feldman, 779 F. Supp. 2d at 487.

Finally, the County notes that it is implicit in the fourth element of a failure to

10

Case 2:10-cv-00056-BR   Document 34   Filed 06/19/12   Page 10 of 19

accommodate claim that the employer and employee must engage in an interactive process to identify reasonable accommodations.  See Haneke, 131 F. App'x at 400; 29 C.F.R. § 1630.2(o)(3).  The County maintains that plaintiff has not stated a failure to accommodate claim because "it is clear from the face of Plaintiff's pleading that Defendant did not refuse to engage in the interactive process."  (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 12.)  The court disagrees with the County's analysis of the second amended complaint and again emphasizes that the complaint must be construed in the light most favorable to the plaintiff on a motion to dismiss.  With respect to the interactive process, plaintiff specifically alleges:

> Defendant was unwilling to engage in a meaningful process to reasonably accommodate Plaintiff's medical conditions.  Defendant refused to permanently assign Plaintiff to the desk position or to another work location despite having ample medical documentation from Plaintiff's doctors and its own physician that confirmed her medical conditions and requested she be removed from the drive-thru window.

(Second Am. Compl., DE # 24, ¶ 68.)  Plaintiff also alleges that she "was forced to continue working at the drive-thru window and was informed by a supervisor that if she did not like it that she should find another job."  (Id. ¶ 67.)  At this stage of the litigation, these allegations are sufficient to show that the County refused to engage in an interactive process with plaintiff.  As a result, plaintiff will be permitted to proceed with her failure to accommodate claim.

Next, the court considers plaintiff's disability discrimination claim.  Absent direct evidence, a plaintiff alleges a *prima facie* case of discrimination under the ADA by demonstrating that: "(1) she is within the ADA's protected class; (2) she suffered adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful

11

discrimination." Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 543 (E.D.N.C. 2010), aff'd, 440 F. App'x 169 (4th Cir. 2011); see also Rhoads, 257 F.3d at 387 n.11; Haulbrook v. Michelin N. Am. Inc., 252 F.3d 696, 702 (4th Cir. 2001).

The County first asserts that plaintiff has not sufficiently identified the nature of the alleged adverse employment actions that were taken against her. However, for the same reasons discussed previously in Section II.B. with respect to plaintiff's Title VII race discrimination claim, the court finds this argument to be without merit. The County further contends that plaintiff has failed to allege that she was meeting legitimate expectations at the time of her termination. Again, for the reasons discussed in Section II.B. in relation to the Title VII race discrimination claim, the court rejects the County's argument regarding this issue.

The County also maintains that plaintiff fails to allege the fourth element of a *prima facie* case because plaintiff's "comparison to other employees is completely devoid of facts which would allow the Court to draw any reasonable conclusion of discrimination." (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 11.) However, "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010), cert. denied, 131 S. Ct. 1491 (2011); see also Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003). "[E]ven if a plaintiff does not plead facts supporting an inference of differential treatment of similarly situated individuals outside the plaintiff's protective class, the plaintiff can still present a prima facie case provided that [she] can point to facts tending to establish that [she] suffered an adverse employment action under circumstances giving rise to an inference of discrimination." Hobson v. St. Luke's Hosp. & Health Network, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (citation and

12

internal quotation marks omitted); see also Blistein v. St. John's Coll., 74 F.3d 1459, 1470 (4th Cir. 1996) (A plaintiff may establish the fourth element of the *prima facie* case either by identifying a similarly situated comparator "or by producing some other evidence indicating that the employer did not treat [disability] neutrally . . . ." (emphasis in original) (citation and internal quotation marks omitted)), overruled in part on other grounds, Oubre v. Entergy Operations, Inc., 522 U.S. 422, 428 (1998).

Here, despite the County's allegation that plaintiff's attempt to compare herself to other employees is inadequate, the court finds that plaintiff has pointed to facts which show that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination. Plaintiff alleges that she informed the County of her disability resulting from rhinitis and chronic asthma (Second Am. Compl., DE # 24, ¶¶ 48-49, 52, 54); that the County refused to provide her requested accommodation, assigned her to work at the drive-thru window, and took other unlawful actions against her (id. ¶¶ 56, 59); that she used her sick leave and vacation time from May through June 2009 in order to not have to continue working at the drive-thru window (id. ¶¶ 28-29); and that defendant terminated her on 22 June 2009 for alleged insubordination (id. ¶ 30). Importantly, plaintiff also alleges that "[t]he stated, but pretextual reason for firing Plaintiff was her refusal to return to work, even though her return to work was conditioned on working at the very same window that was making her violently ill." (Id. ¶ 58.) These facts are sufficient to support a plausible inference that the County terminated plaintiff because of her disability. Thus, plaintiff's disability discrimination claim survives the County's motion to dismiss.

13

D.  Retaliation Claim

Plaintiff alleges in her second amended complaint that beginning in May 2008, she complained about "being harrassed because of her race, being unfairly treated because of her race and being unlawfully denied an accommodation." (Id. ¶ 75.) After receiving no relief, she filed the first of two charges of discrimination with the EEOC in October 2008. (Id. ¶ 77.) Plaintiff maintains that the County took several adverse actions against her, including terminating her on 22 June 2009, because she filed a complaint with the EEOC. (Id. ¶¶ 79-80.) In order to establish a *prima facie* case of retaliation, a plaintiff must allege (1) that she engaged in a protected activity; (2) that she suffered an adverse action subsequent to engaging in the protected activity; and (3) that there was a causal link between the protected activity and the adverse action. Coleman, 626 F.3d at 190 (applying these elements in the Rule 12(b)(6) context); Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (same); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991).

The County appears to concede that the first two elements of this claim have been satisfactorily pled, at least with respect to the adverse action of plaintiff's termination. (See Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 13 ("Defendant agrees that the filing of an EEOC charge is a protected activity, and that termination can constitute an adverse employment action.").) However, the County contends that plaintiff has failed to plead sufficient allegations regarding the third element of her *prima facie* case, that is, to allege adequate facts to demonstrate a causal connection between her discharge and the protected expression. In considering the County's argument, the court notes that under Fourth Circuit law, very little proof is required to establish the causal link in a retaliation case. See, e.g., McNairn, 929 F.2d at

980 (stating, in reference to the causal connection element of a retaliation case, that "it can be inferred that the termination was triggered by the [protected activity]"); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir. 1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required.").

Nevertheless, the County argues that the nearly nine-month gap between the filing of plaintiff's EEOC charge and her termination is too long of a time lapse to infer a causal connection. (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 15.) Although the court is "mindful . . . of the fact that generally the passage of time . . . tends to negate the inference of discrimination," Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), at the motion to dismiss stage, the court is unwilling to find that plaintiff has failed to demonstrate a causal connection between her discharge and the protected expression. See, e.g., McNairn, 929 F.2d at 977 (causal connection was inferred where approximately eight months elapsed between the plaintiff's protected activity and the decision not to renew her appointment); Rehman v. State Univ. of N.Y., 596 F. Supp. 2d 643, 653-54 (E.D.N.Y. 2009) (denying motion to dismiss based on lapse of eight months, noting that "the plaintiff would have [an] opportunity through discovery to produce direct evidence of a causal connection or to argue that, under the circumstances of this case, [the time period] is temporally close enough to support an inference of causation" (first alteration in original) (citation and internal quotation marks omitted)).

Of course, the record is not clear as to when or if the individual or individuals who took the alleged adverse actions against plaintiff actually learned of her protected activity. Such information could potentially undermine plaintiff's inference of causation. See, e.g., Dowe v.

15

Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). But because plaintiff has alleged that the County "was aware" of plaintiff's protected activity when the adverse actions were taken against her (Second Am. Compl., DE # 24, ¶ 83), the court must find, viewing the complaint in the light most favorable to plaintiff, that plaintiff has stated a claim, at least at this early stage, for discriminatory retaliation. Accordingly, the County's motion to dismiss will be denied with respect to this claim.

E.      Hostile Work Environment Claim

Plaintiff also appears to allege that the County subjected her to a hostile work environment based both on her race and her disability. (See Second Am. Compl., DE # 24, ¶¶ 92, 94.) To establish such a claim, plaintiff must demonstrate that (1) she was subjected to unwelcome harassment; (2) she was harassed because of her membership in a protected class; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) some factual basis exists to impute liability for the harassment to the employer. See, e.g., Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006); Fox v. General Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).

Here, plaintiff claims that she was "routinely humiliated" and that her supervisors "engaged in a persistent pattern of severe or pervasive harassment." (Second Am. Compl., DE # 24, ¶ 92.) The hostile work environment claim relies on the exact same allegations that plaintiff makes with respect to her claims of discrimination and retaliation under Title VII and the ADA.

16

In other words, she asserts that she was subjected to unwelcome harassment because she was deliberately assigned to the drive-thru window, was refused reassignment, and was singled out by her supervisor and assigned work beyond her job duties and responsibilities. (See id. ¶¶ 94-95.)

However, plaintiff's allegations of discrete acts of discrimination "cannot be transformed, without more, into a hostile work environment claim." Kilby-Robb v. Spellings, 522 F. Supp. 2d 148, 164 (D.D.C. 2007), aff'd, 309 F. App'x 422 (D.C. Cir. 2009); see also Nurriddin v. Goldin, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) (noting that the bulk of the "hostile" events on which the plaintiff relied were the very employment actions he claimed were discriminatory or retaliatory and concluding that a plaintiff "cannot so easily bootstrap discriminatory claims into a hostile work environment claim"), aff'd, 222 F. App'x 5 (D.C. Cir. 2007); Lester v. Natsios, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."); Parker v. State, Dep't of Pub. Safety, 11 F. Supp. 2d 467, 475 (D. Del. 1998) ("[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address."). Because plaintiff fails to set forth any harassing incidents in the second amended complaint that are separate from her discrimination and retaliation claims, the hostile work environment claim will be dismissed.

17

F.    Wrongful Discharge Claim

Plaintiff further maintains that the County wrongfully discharged her from employment in violation of North Carolina public policy.[3] The County argues that this claim fails "for the same reasons her claims for termination due to race or disability discrimination fail . . . ." (Def.'s Mem. Supp. Mot. Dismiss, DE # 27, at 17.)  This argument is premised on the mistaken notion that the court would dismiss plaintiff's Title VII and ADA discrimination claims. However, as previously discussed in Sections II.B. and II.C., the court is allowing plaintiff's race and disability discrimination claims to proceed.  Because the County has made no other argument regarding the dismissal of this claim, the court will allow the wrongful discharge claim to proceed.

G.    Claims Relating to Negligence

Next, the court considers plaintiff's claim for negligent hiring, training, and supervision. The elements of this claim are: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000); see also White v. Consol. Planning, Inc., 603 S.E.2d 147, 154 (N.C. Ct. App. 2004), disc. review denied, 610 S.E.2d 717 (N.C. 2005); Smith v. Privette, 495 S.E.2d 395, 398 (N.C. Ct. App. 1998).  This claim must be dismissed because "Title VII discrimination, harassment, and/or retaliation cannot serve as the 'underlying tort' in support of" such a claim. Blount v. Carlson Hotels, Inc., Civ. No. 3:11-CV-452-MOC-DSC, 2012 WL 1021735, at *9

---

[3] This court has authority to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

(W.D.N.C. Mar. 1, 2012) (report and recommendation), adopted, 2012 WL 1019507 (W.D.N.C. Mar. 26, 2012); see also Jackson v. FKI Logistex, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) ("By definition, the alleged violations of Title VII . . . are not common-law torts." (relying on McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003)).[4]

Finally, plaintiff has asserted a negligence claim against the County. This claim similarly fails because the allegations of intentional discrimination, retaliation, and harassment made by plaintiff cannot form the basis of a claim sounding in negligence. See, e.g., Mitchell v. Lydall, Inc., 16 F.3d 410 (Table), No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994); Cherry v. Perdue Farms, Inc., No. 2:10-CV-23-FL, 2010 WL 5437222, at *5 (E.D.N.C. Dec. 27, 2010).

### III. CONCLUSION

For the foregoing reasons, the County's second motion to dismiss (DE # 26) is GRANTED IN PART and DENIED IN PART. Plaintiff's hostile work environment claim (Count Five), her negligence claim (Count Seven), and her negligent hiring, training, and supervision claim (Count Seven) are DISMISSED. As set forth in this order, plaintiff's remaining claims shall proceed. The parties are reminded of their obligation to file a proposed discovery plan in accordance with Magistrate Judge Webb's 13 October 2011 order. (DE # 33.)

This 19 June 2012.

                                            W. Earl Britt
                                            Senior U.S. District Judge

---

[4] Furthermore, the negligent hiring, training, and supervision claim fails because plaintiff has not pled any facts to show that prior to the alleged discriminatory, retaliatory, and harassing acts set forth in her second amended complaint, the County knew or had reason to know of the incompetency of the employees at issue. See First Union Nat'l Bank, 202 F.3d at 250; Privette, 495 S.E.2d at 398.